MOFFETT-WEST DRUG CO. VS BYRD.

*1. Instruction—Not reviewable unless exceptions saved.*

Objections to instructions will not be considered by this cour
where no exceptions were saved in the trial court.

*2. Breach of contract—Pleading—Damages.*

Where suit is brought for breach of contract, plaintiff may sho
as damages, his loss of time of himself and one whom he h
hired by reason of the contract, under an allegation of "lo
of time occasioned by defendants failing to comply with sa
agreement."

*3. Depositions—Motion to suppress exhibits.*

Defentant moved to suppress certain exhibits to one of its ov
depositions. This was wholly in the discretion of the cou
and it was not error to refuse to suppress them.

*4. Breach of Contract—Elements of Damages.*

There was evidence showing the difference between the contra
price of the goods in St. Louis and the market value of t
goods at the time of delivery at Chelsea, I. T., which wou
account for most of the damages found by the jury and the
was sufficient evidence in relation to the contract and a brea
of same, for the submission of the case to the jury.

*5. Breach of Contract—Instruction—Damages.*

Suit was brought for the recovery of $100.00 paid upon a co
tract and for damages for its breach. Defendant asks th
the jury be instructed that until a breach is shown, the pla
tiff would not be entitled to recover said sum of $100.00. T
court instructed the jury that until a breach was shown pla
tiff would be "only entitled to recover the $100.00 paid on
contract, but if a contract and a breach are shown, the pla
tiff is entitled to recover such other amount of damage as
may find from the evidence he has sustained." *Held*,
erroneous.

Appeal from the United States Court for the Nor
ern District.

Wm. M. Springer, Judge.

Suit by L. A. Byrd vs Moffett-West Drug Co.    Judgment for plaintiff.    Defendant appeals.    Affirmed.

This was an action instituted on the 2d day of July, A. D., 1895, before Robert L. McClure, United States commissioner for the Northern district of the Indian Territory, at Vinita, by the appellee ( plaintiff below ), against the appellant ( defendant below ), alleging that the plaintiff purchased from the defendant a stock of drugs of the value of $555.85, the terms of payment being $100 cash when the order was given and purchase made, $100 payable on the delivery of the goods, balance in two equal payments; notes to be given for 60 and 90 days, one-half each secured by a mortgage on the stock of goods purchased and the store building at Chelsea, Ind. Ter., in which the goods were to be placed, or mortgage on live stock and other property. Plaintiff alleges that he paid the $100 cash, and upon the arrival of the goods at Chelsea, Ind. Ter., tendered the additional cash amount of $100 ; but the defendant refused to deliver said goods to the plaintiff, or any part thereof. Plaintiff further alleges that he further offered to comply with the contract of purchase by executing notes and mortgages as above set forth.    Therefore he claims damages for breach of contract, for loss and injury which his credit has sustained by defendant's refusal to comply with its agreement, by loss of time which had been occasioned by said breach, by the difference in the contract price of said goods and carriage to Chelsea, Ind. Ter., and the retail price of said goods less expense of marketing same at Chelsea, Ind. Ter., and demands judgment and damages for the sum of $00 and costs.    On the same day he filed an affidavit and bond for attachment.    On the 11th day of July, defendant filed an answer to the complaint, denying that the plaintiff

has a just and lawful claim founded upon a breach of con-
tract to deliver goods, denies that the plaintiff is damaged
in the sum of $300 or any other sum, and asks that defend
ant be discharged with reasonable costs and $150 damages
against plaintiff for his improperly securing the issuance o:
said attachment. On the same day, the case was tried be
fore the commissioner and a jury, who returned a verdic
for $176.40, and found the issue of attachment for the plain
tiff; whereupon judgment was rendered upon the verdict
and for costs, amounting to $50.95. Defendant appealed
On August 6, 1895, defendant filed his affidavit and bond
Appeal granted, and bond approved. On the 25th day o
February, 1896, the defendant moved that Exhibits C, D, E
and F-1 to the deposition of W. G. Sludder, taken on th
part of the defendant, be suppressed, which motion, o
March 5, 1896, was sustained as to Exhibit D, and overrule
as to the balance of the exhibits. On the 10th day of March
1896, the plaintiff filed an amendment to his complaint, pray
ing for judgment for $100 paid to defendant, damages fc
loss of credit by reason of the defendant's refusing to con
ply with its contract in the sum of $100, also loss of tim
occasioned by the defendant's failure to comply with th
said agreement in the sum of $25, also the difference in th
contract price of said goods and the value of said goods
Chelsea in the sum of $75, and for costs of suit. On th
same day, the case was tried before the Honorable Willia
M. Springer and a jury, who returned a verdict for $10
with interest at the rate of 6 per cent. per annum from Ma
21, 1895, and damages, $75, and costs, and attachment su
tained. On the 12th day of March, motion for a new tri
was made and overruled by the court, and judgment rende
ed upon the verdict. Defendant excepted, and prayed
appeal to the next term of the court of appeals of the I
dian Territory, and 30 days was given defendant to file
bill of exceptions. On April 8th, by agreement betwe

ounsel, 30 days additional was granted to file a bill of exceptions; and on the 5th day of May the bill of exceptions was signed and sealed, and made a part of the record, and filed. Bond for appeal was filed on March 31, 1896. The bill of exceptions preserves the evidence taken on the trial, and the instructions requested by the defendant to be given to the jury which the court declined to give, but gives the second instruction requested in a modified form. From the evidence it appears that the plaintiff telegraphed the defendant that he wanted to purchase a stock of drugs from them, and defendant answered that they would send their traveling salesman, Mr. Mittong, to Chelsea, Ind. Ter., to see plaintiff; and they did so, on or about April 16, 1895. The plaintiff and Mr. Mittong agreed upon the goods to be purchased, and how they were to be paid for. The prices were to be fixed in St. Louis, and the plaintiff was to pay $100 cash,—$100 when the goods should arrive in Chelsea, and the balance in two equal payments, at 60 and 90 days after date, for which notes were to be executed, to be secured by mortgage on the stock of goods thus purchased and the store building in which the same were to be placed. Plaintiff paid $100 cash on account to Mr. Mittong, and took his receipt, and on the same day Mr. Mittong sent to defendant the order for the goods. In the letter accompanying the order, Mr. Mittong writes defendant as follows: "If you think that you want this order on these terms, I think it would be advisable for you to have mortgage made out and forwarded to me, and I will go there, and get it signed and fixed up;" and in the same letter writes further as follows: "I did not ask him, but presume if you think that stock and building is not sufficient security, that he would not object to giving us a mortgage on live stock."

*John B. Turner* and *James Burckhalter*, for appellant.

1. The court erred in permitting Byrd to prove

special damages by testifying that he had made special preparation to receive this bill of goods and go into the drug business by erecting a building at Chelsea, for the reason that the damage is too remote, and he had not alleged them as special in his complaint. The court erred in permitting Byrd to prove the hiring of Dr. Matthews and the amount paid him as special damages. The court erred in allowing Byrd to testify as to his own loss of time. Boone on Code Pleading, ( Pony ), § 18 ; Bunch vs Potts 57 Ark. 264.

2. The court erred in permitting plaintiff to read certain exhibits to the deposition of defendant's witness Such exhibits being confidential communications. 1 Thompson on Trials, 570 ; Commercial Bank vs Union Bank, 1 N. Y. 203.

3. The measure of damages, if the seller fails to deliver the goods, is the difference between the contract price and the market value of them at the time and place of delivery. 5 A. & E. Enc. of Law, 30 ; Hanna vs Harter, Ark. 397 ; Bunch vs. Potts, 57 Ark. 275 ; Sedgewick on the Measure of Damages, ( 7th Ed. ), 578, note a.

*W. H. Tibbils* and *Denison & Maxey*, for appellee.

No brief is on file for appellee.

TOWNSEND, J. ( after stating the facts ). The appellant has filed eight specifications of error, which are as follows, to wit: "(1) The court erred in permitting Byrd to prove special damages by testifying that he had made special preparation to receive this bill of goods, and go into the drug business by erecting a building at Chelsea. (2) In permitting Byrd to prove special damages by testifying that a part of his especial preparation to receive these goods consisted in hiring Dr. Matthews, and what he paid

him. (3) In permitting Byrd to prove special damages by testifying that part of his special damages consisted in nine days' loss of individual time, preparing for and awaiting the arrival of these goods. (4) In admitting certain testimony. (5) In permitting plaintiff to read to the jury Exhibits C, E, and F-1 to W. G. Sludder's deposition, and overruling defendant's motion to suppress the same. (6) In refusing to instruct peremptorily for defendant on the evidence. (7) In refusing to give defendant's instruction ( No. 2 ), which is as follows: 'If you find that there existed between plaintiff and defendant a contract, then the burden of proof is upon the plaintiff to show by a fair preponderence of the evidence a breach of said contract by defendant refusing or neglecting to comply with the terms thereof, and to show what damage, if any, he sustained by reason of said breach; and, until plaintiff has shown the contract and its breach, he is not entitled to recover the $100 paid on the contract or any other amount.' (8) In modifying instruction No. 2 so as to read: 'If you find that there existed between plaintiff and defendant a contract, then the burden of proof is upon the plaintiff to show by a fair preponderance of the evidence a breach of said contract by defendant refusing or neglecting to comply with the terms thereof, and to show what damage, if any, he sustained by reason of said breach ; and, until plaintiff has shown a contract and its breach, he is only entitled to recover the $100 paid on the contract ; but, if the contract and a breach are shown, the plaintiff is entitled to recover, in addition thereto, such other amount of damages as you may find from the evidence he. has sustained.'"

So far as the first specification of error is concerned, it is sufficient answer to say that no exception was reserved to the admission of the testimony, but, if there had been, no sum whatever was proven as an item of damages in that respect.

*Testimony—Exceptions.*

It is contended by appellant that no allegation of special damage in his complaint covered the items mentioned in specifications of error 2 and 4 ; but he concedes that the loss of the individual time of plaintiff is alleged as special damages in specification No. 3. The allegation in the complaint is "loss of time occasioned by the defendant's failure to comply with the said agreement." This allegation could cover the time of Dr. Matthews, as well as plaintiff's individual time, and also plaintiff's time on his trip to Vinita, to which specifications of error Nos. 2, 3, and 4 refer. But appellant argues that all such damages are too remote even had they been specially alleged. We cannot concur in this view. The court was particularly careful to limit the time to a period between the 6th day of May and the 20th day of May, it being the time that elapsed between the arrival of the goods at Chelsea and the instituting of this action. These items of damage, though small in amount, were the natural and proximate result of the shipment of the goods under the contract of purchase, and their arrival at destination, where plaintiff was to receive them.

**Breach of contract— Damages.**

Specification of error No. 5 goes to the refusal of the court to suppress Exhibits C, E, and F-1 to W. G. Sludder's deposition. This was a deposition taken by appellant itself of a trusted employe, known as its "credit man," to be used on the trial of this cause. This was wholly in the discretion of the court, and if, in the opinion of the court, these exhibits threw light upon this transaction, it was not only in his discretion, but eminently proper that he should admit them.

**Depositions— Right to read exhibits.**

Specification of error No. 6 need not be considered. That there was evidence of damage that properly went to the jury there can be no question. There was evidence that was properly admitted showing the difference between the contract price in St. Louis and the market value at Chelsea,

Ind. Ter., at time of delivery, which would account for al- most all the damage found by the jury in their verdict ; and the question whether there was a contract existing between the parties and a breach of the same was fully and fairly submitted to the jury by the court.

The seventh and eighth specifications of error can very properly be considered together. They relate to the refusal of the court to give instruction No. 2 as requested by appellant, and the giving of the same in a modified form. The court gave the following, as requested by appellant's request No. 2: "If you find that there existed between plaintiff and defendant a contract, then the burden of proof is upon the plaintiff to show by a fair preponderance of the evidence a breach of said contract by defendant refusing or neglecting to comply with the terms thereof, and to show what damage, if any, he sustained by reason of said breach ; and, until plaintiff has shown a contract and its breach, he is "—and refused to give the following words at the close of appellant's request No. 2, to wit, "not entitled to recover the $100 paid on the contract or any other amount," and in place of them substituted the following words, to wit, "only entitled to recovered the $100 paid on the contract, but if the contract and a breach are shown, the plaintiff is entitled to recover, in addition thereto, such other amount of damages as you may find from the evidence he has sustained." On page 39 of the transcript, during the examination of the appellee, appears the following:. "Counsel for the defendants offer to confess judgment for the one hundred dollars, which offer plaintiff, by his counsel, refused to accept. The court:. The records will show that the plaintiff has made a claim for this $100, and, if they should sue for it hereafter, this suit will be a bar to the other suit." This action of the court, which is fully authorized by the liberal statute of amendments of Arkansas, and now in force in this territory, amounted to an amendment to plaintiff's

complaint, and justifies the charge of the court as made in giving plaintiff's request No. 2 as modified. It is perfectly evident from an examination of the letter of Mr. Mittong to the appellant when the order for these goods was sent in to it that both he and the appellee had come to a full understanding in regard to the purchase of these goods and terms of payment ; and, had appellant fully advised its counsel of that correspondence, it is very questionable if this suit would ever have been necessitated ; but when they acted upon the order, and shipped the goods, and then commenced their objections to the security agreed upon, we think the appellee was justified in the conclusion that appellant did not intend to carry out the contract. The terms of the contract should have been settled before the goods were shipped, if appellant did not propose to accept it. We are of the opinion from an examination of all the evidence that substantial justice has been done, and therefore the judgment below is confirmed.

CLAYTON and THOMAS, JJ., concur.